___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:26-cv-00398-FWS-AGR                                    Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

___

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Petitioner:                          Attorneys Present for Respondents:

Not Present                                                                 Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [5]**

Petitioner Akop Dzhulakyan brings this Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 against Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); and Fereti Semaia, an administrator at Adelanto Detention Center. (Dkt. 1 ("Petition" or "Pet.").) Before the court is Petitioner's *Ex Parte* Application for Temporary Restraining Order. (Dkt. 5 ("Application" or "App.").) Respondents did not file any response to the Application, and the deadline to do so has passed. (*See* Dkts. 6, 7.) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Based on the record, as applied to the relevant law, the Application is **GRANTED.**

I.   **Background**

Petitioner, "a native and citizen of the Soviet Union, . . . was born in what is now Armenia." (App. at 1-2; Dkt. 5-2 (Petitioner's Declaration, "P. Decl.") ¶ 1.) Though he was previously a permanent resident, Petitioner was ordered removed on April 21, 2004 "after suffering a conviction that made him removable." (App. at 2; P. Decl. ¶ 2; *see* Dkt. 5-3 (DHS documents) at 5.) "Because ICE ha[d] not effected [Petitioner's] deportation or removal during the period prescribed by law, it [was] ordered that [Petitioner] be placed under supervision and

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:26-cv-00398-FWS-AGR                                      Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

permitted to be at large under [certain] conditions." (Dkt. 5-3 at 5.) Accordingly, on May 29, 2012, Petitioner was placed on an Order of Supervision ("OSUP"). (*Id.*; P. Decl. ¶ 3.) In 2014, at Respondents' request, Petitioner applied for a passport at the Armenian consulate, but "the consulate refused to issue a passport or a travel document to Armenia," and "Respondents recognized that it was unlikely that Armenia would ever issue a travel document." (App. at 2; *see* Dkt. 5-4 (Rejection Letter); Dkt. 5-5 (Declaration of Douglas Jalaie, "Jalaie Decl.") ¶ 4; P. Decl. ¶ 6.)

Pursuant to the terms of his OSUP, Petitioner reported on numerous occasions in 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, and 2025. (Dkt. 5-3 at 4; P. Decl. ¶ 4.) During a scheduled, routine check-in on January 16, 2026, Petitioner was detained, with ICE citing "changed circumstances" for the revocation of Petitioner's nearly 14-year long OSUP. (Jalaie Decl. ¶ 5; P. Decl. ¶¶ 7-8.) Petitioner "was not provided any written notice identifying the specific things that had changed circumstances or explaining why [his] supervision was being revoked," "was not told that there was a travel document available for [him], or any timeframe when [he] would actually be removed." (P. Decl. ¶ 8.)

Petitioner alleges that he was re-detained in violation of the due process clause of the Fifth Amendment to the United States Constitution; and in violation of the Administrative Procedures Act under 5 U.S.C. § 702 for not complying with 8 C.F.R. § 241.4(l) and 241.13(i) when revoking the OSUP. (Pet. at 6.)

## II.     Legal Standard

The "opportunities for legitimate *ex parte* applications are extremely limited," *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013), and such applications are "rarely justified," *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). To justify *ex parte* relief, the moving party must show (1) that their cause of action will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures, and (2) that they are without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect. *Id.* at 492-93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00398-FWS-AGR        Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

      The analysis for granting a temporary restraining order ("TRO") is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Either "is an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief." *See Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A plaintiff seeking a TRO must demonstrate (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest." *Id.* (quoting *Winter*, 555 U.S. at 20). Courts in the Ninth Circuit "also employ an alternative serious questions standard, also known as the sliding scale variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under that approach, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

      A party seeking preliminary injunctive relief must make a "certain threshold showing" on "each [*Winter*] factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). "The most important among these factors is the likelihood of success on the merits." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). "This is especially true for constitutional claims, as the remaining *Winter* factors typically favor enjoining laws thought to be unconstitutional." *Id.*

### III. Analysis

      The court finds Petitioner has adequately demonstrated that *ex parte* relief is warranted and has also met the burden to show that he is entitled to a TRO under the *Winter* factors. Respondents do not argue otherwise; indeed, Respondents failed to file any response at all to the Application within the court's deadline. (Dkt. 6 (setting deadline of February 9, 2026, at 5:00 p.m.); Dkt. 7 (Petitioner's filing shortly after the deadline noting that no opposition had been filed).) In this District, the Local Rules state that "[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00398-FWS-AGR                                    Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

___

denial of the motion."  L.R. 7-12.  The court could grant the Application on this basis alone.  Nevertheless, the court turns to the merits.

As to the first *Winter* factor, likelihood of success on the merits, the court evaluates one of Petitioner's due process arguments—specifically that the government failed to follow its own regulations in detaining Petitioner—and finds it sufficient to support Petitioner's requested relief.  *See Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *3 (N.D. Cal. Nov. 26, 2024) (noting that a "likelihood of success on even just one claim is sufficient [for injunctive relief] as long as that claim would support the injunctive relief sought").  The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V.  Due process rights extend to noncitizens present in the United States, including those subject to final removal orders.  *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.  Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." (citation modified)).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified).

Section 1231 of Title 8 of the United States Code governs the detention and removal of noncitizens who have been ordered removed.  Two regulations governing the revocation of release are 8 C.F.R. §§ 241.13(i)(3) and 241.4(l), which require that "upon revocation" the alien "be notified of the reasons for revocation of his or her release" and given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.13(i)(3) & 241.4(l).  "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."  *Constantinovici v. Bondi*, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (citation modified).

"It is well-established that government agencies are required to follow their own regulations."  *Constantinovici*, 2025 WL 2898985, at *6 (citing *United States ex rel. Accardi v.*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00398-FWS-AGR                                    Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

*Shaughnessy*, 347 U.S. 260, 268 (1954)); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations."). In this case, the court finds Petitioner adequately demonstrates that he is likely to show that the government did not adequately comply with 8 C.F.R. §§ 241.13(i)(3) and 241.4(l). Petitioner was informed that the decision to detain him was made based on "changed circumstances," (P. Decl. ¶ 8), which "is somewhat of a standardized language used by ICE when revoking an OSUP," (Jalaie Decl. ¶ 5). Courts confronted with similar language regularly find that it does not comply with 8 C.F.R. § 241.4(l)'s notice requirement. *See, e.g.*, *Bui v. Warden of the Otay Mesa Det. Facility*, 2025 WL 2988356, at *3 (S.D. Cal. Oct. 23, 2025) (collecting cases). "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" *Constantinovici*, 2025 WL 2898985, at *6 (quoting *Rokhfirooz v. Larose*, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025)) (collecting cases).

Under the second *Winter* factor, the court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the due process clause protects. *Id.*; *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing "irreparable harms imposed on anyone subject to immigration detention."). "Given the Court's finding that Petitioner is likely to succeed on at least one of his claims, Petitioner has established an immediate threatened injury. Therefore, the second *Winter* factor favors Petitioner." *Phakeokoth v. Noem*, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025).

"The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac v. Becerra*, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025). "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)). Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash v. Noem*, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) (ordering release where the petitioner had been detained without notice and an opportunity to be heard).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00398-FWS-AGR	Date: February 10, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

"Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal[.]" *Id.* "In short, the *Winter* Factors weigh heavily in favor of granting the [Application] with respect to Petitioner's wrongful detention claims." *Esmail v. Noem*, 2025 WL 3030590, at *8–9 (C.D. Cal. Sept. 12, 2025). Accordingly, the Application is **GRANTED.**

IV.   **Disposition**

For the foregoing reasons, the Application is **GRANTED**. The court **ORDERS** Respondents to release Petitioner from custody on or before **February 13, 2026, at 1:00 p.m. Pacific Standard Time**. Petitioner shall be released on the original OSUP under the terms and conditions existing as if Petitioner had not been detained. "To be clear, this Order does not provide [Petitioner] with blanket immunity from future removal—that is outside the Court's power for the reasons discussed above—but any future enforcement actions after release must comply with the required procedures." *Delkash*, 2025 WL 2683988, at *7.

Finally, Respondents are **ORDERED** to show cause in writing on or before **February 18, 2026,** as to why the court should not issue a preliminary injunction. Petitioner may file a response on or before **February 24, 2026**. The court sets a hearing on whether a preliminary injunction should issue for **March 5, 2026, at 10:00 a.m., in Courtroom 10D.**