UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00398-FWS-PVC Date: August 31, 2026
Title: Akop Dzhulakyan v. Kristi Noem *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER REJECTING REPORT AND RECOMMENDATION [25]; DISMISSING PETITION AS MOOT**

## I. Introduction and Background

Petitioner Akop Dzhulakyan brings this Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 against Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); and Fereti Semaia, an administrator at Adelanto Detention Center. (Dkt. 1 ("Petition" or "Pet.").) Petitioner, "a native and citizen of the Soviet Union, . . . was born in what is now Armenia." (Dkt. 5-2 (Petitioner's Declaration, "P. Decl.") ¶ 1.) Though he was previously a permanent resident, Petitioner was ordered removed on April 21, 2004 "after suffering a conviction that made him removable." (P. Decl. ¶ 2; *see* Dkt. 5-3 (DHS documents) at 5.) "Because ICE ha[d] not effected [Petitioner's] deportation or removal during the period prescribed by law, it [was] ordered that [Petitioner] be placed under supervision and permitted to be at large under [certain] conditions." (Dkt. 5-3 at 5.) Accordingly, on May 29, 2012, Petitioner was placed on an Order of Supervision ("OSUP"). (*Id.*; P. Decl. ¶ 3.) In 2014, at Respondents' request, Petitioner applied for a passport at the Armenian consulate, but "the consulate refused to issue a passport or a travel document to Armenia," and "Respondents recognized that it was unlikely that Armenia would ever issue a travel document." (App. at 2; *see* Dkt. 5-4 (Rejection Letter); Dkt. 5-5 (Declaration of Douglas Jalaie, "Jalaie Decl.") ¶ 4; P. Decl. ¶ 6.)

Pursuant to the terms of his OSUP, Petitioner reported on numerous occasions in 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, and 2025. (Dkt. 5-3 at 4; P. Decl. ¶ 4.) During a scheduled, routine check-in on January 16, 2026, Petitioner was detained, with ICE citing "changed circumstances" for the revocation of Petitioner's nearly 14-year long OSUP. (Jalaie Decl. ¶ 5; P. Decl. ¶¶ 7-8.) Petitioner "was not provided any written notice identifying the specific things that had changed circumstances or explaining why [his] supervision was being revoked," "was not told that there was a travel document available for [him], or any timeframe when [he] would actually be removed." (P. Decl. ¶ 8.)

In the Petition, Petitioner alleges that he was re-detained in violation of the due process clause of the Fifth Amendment to the United States Constitution; and in violation of the Administrative Procedures Act under 5 U.S.C. § 702 for not complying with 8 C.F.R. § 241.4(l) and 241.13(i) when revoking the OSUP. (Pet. at 6.)

On February 10, 2026, the court granted Petitioner's Motion for a Temporary Restraining order, ordering "Respondents to release Petitioner from custody on or before February 13, 2026, at 1:00 p.m. Pacific Standard Time . . . on the original OSUP under the terms and conditions existing as if Petitioner had not been detained." (Dkt. 6 ("TRO") at 6 (emphasis omitted).) Respondents complied, and Petitioner was released on February 11, 2026. (Dkt. 14-1.)

On March 4, 2026, the court denied as moot Petitioner's request for a preliminary injunction, reasoning, "Based on the current record, as applied to the relevant law, the court finds the relief granted in the Temporary Restraining Order was provided, and Petitioner fails to make an adequate showing that a Preliminary Injunction affording further relief is warranted at this time." (Dkt. 15 at 1.) The court referred further proceedings on the merits of the Petition to the assigned Magistrate Judge. (*Id.* at 2.)

Before the court is the Magistrate Judge's June 29, 2026, Report and Recommendation, which recommends the court find the Petition is not moot, grant the Petition, and enjoin "Respondents from re-detaining Petitioner unless they comply with the Due Process Clause of the Fifth Amendment; the Administrative Procedures Act, 5 U.S.C. § 702, and 8 C.F.R. §§ 241.4(l) and 241.13(i)" or "removing Petitioner to a third country without notice and an opportunity to challenge the removal through a reasonable fear interview proceeding." (Dkt. 25

("Report and Recommendation") at 5.) Respondents object to the Report and Recommendation. (Dkt. 26.) Based on the record, as applied to the relevant law, and on *de novo* review, *see* 28 U.S.C. § 636(b)(1)(C), the court **REJECTS** the Report and Recommendation and **DISMISSES** the Petition.

## II. Legal Standard

"For a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). "By contrast, where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody." *Id.* "Collateral consequences create concrete legal disadvantages." *Alam v. Carter*, 843 F. Appx. 953, 954 (9th Cir. 2021) (internal quotation marks omitted).

"A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987); *see also NASD Disp. Resol., Inc. v. Jud. Council*, 488 F.3d 1065, 1068 (9th Cir. 2007) (finding appeal to be moot when the plaintiffs had already been granted the relief they sought). Courts have an obligation to consider mootness *sua sponte*, and should deny requested relief where it is superfluous. *In re Burrell*, 415 F.3d 994, 997 (9th Cir. 2005). The "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

Based on the record, as applied to the relevant law, the court finds Petitioner's release "does not give rise to collateral consequences that are redressable by success on his original petition." *Abdala*, 488 F.3d at 1065; *see Mejia v. Semaia*, 2025 WL 2633165, *2 (C.D. Cal. 2025) ("[I]f release from custody fully resolves the claims raised in a habeas petition, the claims are indeed moot."). While it is true that Petitioner remains subject to continuing restraints on his liberty under the terms of his bond, (*see* Dkt. 22 (Petitioner's Brief Regarding Mootness) at 6-7 (arguing "the OSUP creates an ongoing relationship between the parties")), the allegations in the Petition and the documents in the record reflect that Petitioner was subject to similar

restraints *before* his unlawful detention. (*See* Dkt. 5-3.) In other words, the effect of the relief granted in the TRO was to put Petitioner in the position he would have been were he never unlawfully detained. The court is not persuaded that the fact that "Respondents have made no statement or binding indication that it will not 'return to its old ways' if the Court dismisses the action" is sufficient to confer legally-material collateral consequences. *See Abdala*, 488 F.3d at 1065.

In addition, the court finds that any concern regarding possible future re-detention appears to be "speculative and hypothetical." *Alam*, 843 F.Appx. at 954; *see id.* (holding that the petitioner's release from detention mooted his petition for a writ of habeas corpus and that "[a]ny risk of re-detention does not save his petition from mootness, as he was released pursuant to court order and there is thus a legal impediment to his re-detention"). Accordingly, the court does not find a preventative blanket order prohibiting re-detention absent a pre-deprivation hearing appropriate.

## III. Disposition

For the foregoing reasons, the Report and Recommendation is **REJECTED**. The Petition is **DENIED AS MOOT.** This case is therefore **DISMISSED WITHOUT PREJUDICE**.